### DENTON et al. vs. RODDY.

1. EVIDENCE: *Decree.*
   The certified copy of a decree alone, is sufficient evidence that such a decree has been made.

2. DECREE: *By consent of unauthorized attorney, not void.*
   Though an attorney appears for a party to a suit without his authority, and consents to a decree, it is only voidable for fraud, and can not be collaterally attacked.

APPEAL from *Woodruff* Circuit Court in Chancery.
Hon. J. N. CYPERT, Circuit Judge.
*Coody,* for appellants.
*Turner, contra.*

EAKIN, J. On the thirteenth of May, 1844, a tract of land in Jackson (now in Woodruff) county, owned and occupied by Elias B. Roddy, a married man, was sold under execution against him from the circuit court, in favor of Bennett, Morrill & Co., and purchased, at said sale, by William F. Denton, at a price much below its actual value, or the amount of the execution. The sheriff's deed was duly executed.

The plaintiffs in that case, charging that said Denton was their attorney, and had taken the lands to secure the full payment of their judgment, and had died, filed a bill in the Jackson circuit court, on the tenth of July, 1849, against said Roddy, and the widow, executors and heirs of Denton, to subject the lands to the payment of their debt, in accordance with the trust. Roddy filed a cross-bill in that case and died. The suit was revived against his administrator, widow and heirs, who came in and adopted

the cross-bill of Roddy. His widow (the appellee in this cause, and a party in that) also filed her separate cross-bill against all the other parties, claiming dower.

At the May term, 1860, of said court, a decree was made sustaining the lien of complainants to the full amount of their judgment at law, and dismissing the cross-bill of the representatives and heirs of Roddy for want of equity. The dower of the widow was allowed upon her separate cross-bill, and commissioners were appointed to assign it. They reported at the December term, 1860, but their report met with exceptions from the Denton heirs, which were sustained. The cause was afterwards continued, from term to term, without further action upon the matter of dower, until the April term, 1869.

Meanwhile, Roddy, and his wife after his death, remained in the possession of the lands, enjoying the full use thereof, until about the first of January, 1867, after which, until the occurrences hereinafter set forth, she occupied by tenants. In March, 1868, the lands were sold for the taxes of 1867, and bought by R. W. Martin, who obtained a certificate of purchase, and on the twenty-third day of March, 1869, assigned it, for valuable consideration, to the heirs of William F. Denton.

This had been procured by Franklin D. Denton, the executor, and one of the heirs of William F., who had come from Batesville to Augusta upon affairs of the estate of his father. He found said doweress, Martha Roddy, preparing to go, with a married daughter, to live in Texas, and selling off her personal property to obtain money for the purpose. He demanded of her rents, for two-thirds of the place since her husband's death, claiming that to be due, and estimating the amount, together with some taxes he had paid, at $1,500. She expressed herself utterly unable to

pay that amount. He insisted that she should do so, or release any further interest in the lands, which he would take in satisfaction of the debt. She declined, and he became angry, and threatened if she did not comply by a certain hour of the day, at which he meant to start on his return to Batesville, he would sue her, and attach her personal property, and her interest in the dower, as well. She became alarmed and distressed. She was satisfied that he would execute the threat. Her heart was set upon going to live in Texas with her daughter, and the course threatened would render it impossible. She yielded, and executed the release.

At the succeeding term of the Jackson circuit court, this release was brought in; and, it being shown further that the heirs of Denton had paid the whole judgment of Bennett, Morrill & Co., and the parties to the original and cross-bills appearing by their solicitors, a final decree was made, reciting that said Martha had, in due form of law, since the last continuance, conveyed all her interest to the heirs of William F. Denton, and quieting their title and possession. And so the matter rested.

More than six years afterwards, on the seventh of July, 1875, Martha Roddy filed this bill in Woodruff county (to which the territory including the lands had been transferred) against the Denton heirs, renewing the claim of dower, and basing her equity upon her ignorance of her rights at the time she executed the release, and the conduct of the executor, F. D. Denton, in obtaining it. The charge amounts, in effect, to this, that his manner was harsh, overbearing and unkind; that her happiness and comfort depended on going with her daughter; that she executed the instrument under a sort of moral duress; and that she had only recently discovered her rights in the matter, with

regard to her liability for rents. She makes no allusion to the former suit or decree, and prays that her release be canceled, that her dower be assigned, and that she have mesne profits.

Defendants deny fraud or oppression in obtaining the release; set up the decree in the former case as *res judicata;* and rely, also, upon the tax title and the statute of limitations.

Upon the hearing, complainant sought to avoid the effect of the decree of the Jackson circuit court, on the ground of fraud in obtaining it, and want of jurisdiction.

The chancellor gave the relief asked as to dower, and ordered an account of rents and profits since the possession of the Denton heirs—giving complainant a decree for one-third, after deducting taxes and improvements. Defendants appealed.

The first question presented by the record, regards the jurisdiction of the Jackson circuit court to render the decree of April, 1869, quieting the title of the Denton heirs, against the creditors and widow of Elias B. Roddy.

Enough appears from the pleadings, evidence and exhibits, to show that the parties to this bill were all parties to that suit.

The certified copy of the decree alone was sufficient evidence that such a decree had been made; and by its recitals and direct effect, it showed conclusively that all her right of dower, the object of this suit, had been vested in the Denton heirs, in a manner to bind her, whilst it remained in force. There were, also, certified copies of all the original papers in the case, showing the pleadings and subject-matter in controversy.

Although, in her testimony, the complainant, Mrs. Roddy, says her attorney had no authority to appear for her,

and consent to the decree, yet, if that were true, it would
only make it *voidable* for fraud, and it could not be attacked
collaterally. Her bill did not allude to it at all, nor, when
pleaded by defendants, did she seek to amend her bill by
proper averments to attack it for fraud. If the court had
no jurisdiction, the decree is absolutely nothing, and no
proceedings are necessary to avoid it. It binds nobody.
Was it void, or valid, until reversed or annulled?

The county of Woodruff, composed of portions of Jack-
son and St. Francis counties, was established by a valid act
of the legislature of Arkansas, approved November 28,
1862. The lands in controversy, upon which Mrs. Roddy
and her children, the heirs of said Elias, then resided, were
in the portion of Jackson transferred to Woodruff.

The act, which is not in print, provided, in section two,
" That it shall be the duty of plaintiffs in all civil cases, and
of the clerk of the circuit court of the county hereby es-
tablished, in all criminal cases, to procure from the clerks
of the circuit courts of the counties of St. Francis and
Jackson a transcript from the records of their respective
counties of all suits, both civil and criminal, pending
against any person or persons *residing within* the county
hereby established; also, the depositions and other papers
on file, relating to any of said cases, so pending in any of
said counties, on or before the first day of the circuit court,
at the first term thereof, of the county of Woodruff, which
transcript, depositions, and papers, so filed, shall be taken
and considered as records of the circuit court of the county
of Woodruff, and be *proceeded in* as though said suit or suits
had originated in said county of Woodruff."

By section five of the act it was provided, " That it shall
be the duty of the clerk of the county of Woodruff, im-
mediately after his election, to give notice, in writing,

under the seal of his office, if there be any seal, if not, under his private seal, to the clerks and sheriffs of the counties of Jackson and St. Francis, of his election ; also, of the election of sheriff of said county of Woodruff; whereupon it shall be the duty of the clerks of the different counties of Jackson and St. Francis, *upon the application of the plaintiff or plaintiffs,* in any case or cases, which may be pending in any of said courts, *who* reside in the county of Woodruff, to make out a true and perfect transcript from the record of all such matters and things as pertain to any of the said cases, and to certify the same to be true and perfect, and to attach the seal of his office thereto." * * * * " And to envelop the transcript in each case, together with the papers thereto belonging; to seal them up, and direct it to the clerk of the county of Woodruff."

These are all the sections of the act bearing upon the question before us. It will be observed that neither of them have any reference to the location of the real estate in controversy. The transfer of jurisdiction was made to depend upon residence. The policy of the act was to compel plaintiffs, having suits pending against citizens residing in the territory composing the new county, to transfer their cases there, so that the defendants might have the advantage of litigating nearer home, and at their own county seat. A like advantage, at their option, was given to plaintiffs residing within the new county, having suits pending against defendants residing elsewhere. The policy of the last provision is not so obvious, unless it were directed to encouraging business in the new county to give it a favorable start.

There is nothing imposing upon the courts of Jackson and St. Francis counties the duty of ascertaining, upon

their own motion, the residence of litigants. These things were matters *in pais*, of which a court could not take judicial cognizance, as it might of the boundaries of counties, and locations of land described by government surveys. During the progress of suits, residences frequently change. Unless something should be done to bring the fact of residence before the courts, it was not anticipated that the jurisdiction of the court should be lost over all cases against defendants resident in the new county of Woodruff. That would lead to such confusion and uncertainty of rights as to preclude any such construction of the act. It is sufficient that defendants residing in the new county were given the right, upon proper showing and motion, to insist upon the transfer, and that plaintiffs residing therein might have the option.

When the decree, in the case of *Bennett, Morrill & Co. v. The Heirs of Denton*—the heirs of Roddy and his widow—was pronounced, she was, as to them, defendant. The court had been advised that, in 1855, she was an *occupant* of the lands, but could not judicially know her to be a *resident* upon them, or anywhere else in Woodruff county. As complainant in the cross-bill against the Dentons, she made no motion to transfer the cause. It is clear that the Jackson circuit court retained jurisdiction, and that the decree of 1869 remains binding until reversed or annulled by direct proceedings in chancery.

This disposes of the case. It is unnecessary and improper in anticipation to dispose of the other questions affecting the merits. If the complainant can successfully attack the decree upon any ground recognized in equity, she would have the right to do so in the Woodruff court, as incidental to, and connected with, the principal end of her bill, to-wit: to be endowed of lands in Woodruff county

The jurisdiction of the court for that purpose will draw to it the jurisdiction to remove the impediment of a fraudulent decree of another tribunal. Fraud is not imputable to the courts, but to actors in them, and there is neither lack of comity nor contravention of policy in one court removing from its road to equitable relief, an impediment created by the fraud of the parties in another tribunal.

But the fraud should be directly charged and put in issue, and proved under the issue, and the relief should be in answer to a specific and direct prayer for the purpose. The general prayer will not cover relief as to matters which can not be collaterally considered, however plainly made out in evidence.

Reverse the decree, and remand the cause, with directions to allow the complainant, if so advised, to amend the bill, and if she should decline, to dismiss the same at her cost. She will pay the costs of this appeal. The whole costs of the court below will be adjusted by the chancellor, if the suit progresses.